1  Scott J. Tepper (SB# 51693)
   ScottJTepper@msn.com
2  GARFIELD & TEPPER
3  A Partnership of Professional Corporations
   1801 Century Park East, Suite 2400
4  Los Angeles, California 90067
   Tel.: (310) 277-1981  ●  Fax: (818) 225-5350
5
6  Attorneys for Defendant Gary Gorham

7

**FILED**

JUL 17 2017

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

8              UNITED STATES BANKRUPTCY COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

| | |
|---|---|
| 11  In re | Case No. 2-17-bk-12392-BR |
| 12  MARK ELIAS CRONE, | |
| | Chapter 7 |
| 13              Debtor; | |
| | Adv. No. 2:17-ap-01289-BR |
| 14 | |
| 15  JEFFREY A. RINDE and CKR GLOBAL ADVISORS, INC., | **DEFENDANT GARY J. GORHAM'S REPLY IN SUPPORT OF HIS SPECIAL MOTION TO STRIKE; SUPPLEMENTAL DECLARATION OF GARY J. GORHAM AND EXHIBIT** [1] |
| 16              Plaintiffs, | |
| 17     -vs-. | |
| 18 | |
| 19  SUSAN CRONE, GARY GORHAM and LEONIDAS P. FLANGAS, | **(Filed concurrently with Reply Supporting Motion to Dismiss for Failure to State a Claim)** |
| 20              Defendants. | |
| 21 | |
| 22 | **Hearing** |
| 23 | Date:    July 25, 2017 |
| | Time:    10:00 a.m. |
| 24 | Ctrm:    1668 |
| 25 | Judge:   Hon. Barry Russell |

26  [1] Filed non-electronically pursuant to Local Rule 5005-4(c)(2)(a) and Section 3.11(c)(1) of the
27  Court Manual of the United States Bankruptcy Court for the Central District of California (eff.
    April 2017).
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

    Federal Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

    State Court Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

    Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

MEMORANDUM OF POINTS AND AUTHORITIES OF
GARY GORHAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Assertion that "aiding and abetting" communicative
         conduct is not privileged . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Assertion that New York law applies as the original
         forum state . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    MR. GORHAM'S COMMUNICATIVE CONDUCT DURING
      LITIGATION IS ABSOLUTELY PRIVILEGED UNDER
      CIVIL CODE SECTION 47(b), WHETHER CHARACTERIZED
      AS "AIDING OR ABETTING" OR ANYTHING ELSE . . . . . . . . . . . . . . . . . . . 4

III.   NEW YORK LAW IS NOT APPLICABLE TO MR.
      GORHAM'S CONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    The New York State Courts lacked jurisdiction over
         Mr. Gorham . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    California law is applied where the transferor court
         lacks jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.    California choice of law principles would apply its law
         to this action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.    New York choice of law principles also would apply
         California law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

DECLARATION OF GARY GORHAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

EXHIBIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 *ff*

1

# TABLE OF AUTHORITIES

2

<u>Federal Cases</u>

3

*AHW Inv. Partnership v. Citigroup Inc.*
    980 F.Supp. 2d 510 (S.D.N.Y. 2013)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4

*Cobalt Multifamily Inv'rs I, LLC v. Shapiro*
    857 F.Supp. 2d 419 (S.D.N.Y. 2012)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5

6

*Davis v. LSU*
    876 F.2d 412 (5th Cir. 1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7

*Forgash v. Paley*
    659 F.Supp. 728 (S.D.N.Y.1987)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8

9

*GlobalNet Financial.com v. Frank Crystal & Co.*
    449 F.3d 377 (2d Cir. 2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

10

*International Shoe Co. v. Washington*
    326 U.S. 310 (1945)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11

12

*Liberty Synergistics, Inc. v. Microfold Ltd.*
    718 F.3d 138 (2d Cir. 2013)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*
    672 F.3d 155 (2d Cir. 2012)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

14

15

*Mayes v. Leipziger*
    674 F.2d 178 (2d Cir.1982)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16

*Muldoon v. Tropitone Furniture Co.*
    1 F.3d 964 (9th Cir. 1993)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17

18

*The Eastboro Foundation Charitable Trust v. Penzer*
    950 F.Supp.2d 648 (S.D.N.Y. 2013)  . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

19

20

<u>State Court Cases</u>

21

*Aronson v. Kinsella* (1997)
    58 Cal.App.4th 254  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 10

22

*Cooney v. Osgood Mach., Inc.*
    81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d (1993)  . . . . . . . . . . . . . . 13

23

24

*DeMasi v. Rogers*
    34 A.D.3d 720, 826 N.Y.S.2d 106 (2d Dep't 2006)  . . . . . . . . . . . . . 12-13

25

*Dove Audio, Inc. v. Rosenfeld,Meyer & Susman* (1996)
    47 Cal.App.4th 777  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26

27

*Edwards v. Centex Real Estate Corp.* (1997)
    53 Cal. App.4th 15  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28

*Flatley v. Mauro*  (2006)
39 Cal.4th 299 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Front, Inc. v. Khalil*
24 N.Y.3d 713, 28 N.E.3d 15, 4 N.Y.S.3d 581 (2015) . . . . . . . . . . . . . . . . . . . . . 11

*Frontier Oil Corp. v. RLI Ins. Co.* (2007)
153 Cal.App.4th 1436 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Craig* (1938)
12 Cal.2d 93 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*K.T. v. Dash*
37 A.D.3d 107, 827 N.Y.S.2d 112 (1st Dep't 2006) . . . . . . . . . . . . . . . . . . . 12

*McCann v. Foster Wheeler, LLC* (2010)
48 Cal.4th 68 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mosesson v. Jacob D. Fuchsberg Law Firm*
257 A.D.2d 381, 683 N.Y.S.2d 88 (1999) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nedlloyd Lines B.V. v. Superior Court (Seawinds Ltd.)* (1992)
3 Cal.4th 459 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Schultz v. Boy Scouts of Am., Inc.*
65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985) . . . . . . . . . . . . . . . . 12

*Silberg v. Anderson*
(1990) 50 Cal. 3d 205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Statutes</u>

California Civil Code § 47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 15

California C.C.P. § 425.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES OF GARY GORHAM

### I.

### INTRODUCTION

Plaintiffs oppose the special motion to strike by making two arguments. Neither is meritorious.

### A. Assertion that "aiding and abetting" communicative conduct is not privileged.

The first argument made by plaintiffs is essentially an assertion that the communicative conduct and negotiations by Mr. Gorham aided and abetted a theft and, therefore, the communications are not privileged. While as a matter of fact Mr. Gorham's conduct did not abet anything (as it turns out defendant Leonidas Flangas, defendant Susan Crone's lawyer, had and has possession of the stock certificate), the litigation privilege immunizes Mr. Gorham's communicative conduct from any tort claims. It is also uncontradicted that Mr. Gorham was relaying incorrect information his client had told him, so this argument is factually inaccurate as well as factually impossible.

It remains clear that plaintiffs are suing Mr. Gorham because Mr. Gorham was acting as lawyers generally do – engaging in communications about litigation with opposing counsel in connection with representing his client's interests.

As the cases cited by Mr. Gorham in his moving papers demonstrated, the litigation privilege embodied in Civil Code § 47(b) absolutely immunizes Mr. Gorham's statements. The only exception to the absolute privilege is when the defendant is sued for malicious prosecution.

In short, if California law applies, the privileged nature of the communications cannot provide plaintiffs with "evidence" of any actionable misconduct, and Mr. Gorham's special motion to strike under C.C.P. § 425.16 should be granted. As it turns out, Mr. Gorham's communications were also privileged under New York law, but plaintiffs did not brief New York law on that issue, even though they signaled in the heading of one of their arguments that they would.

**B. <u>Assertion that New York law applies as the original forum state</u>**

The second argument made by plaintiffs is that New York law applies, even though Mr. Gorham was in his office in California, representing a California resident, then involved in a California bankruptcy, and the representation involved a potential asset of a California bankruptcy estate (the asset being located, apparently, in Nevada) when Mr. Gorham said what he said and wrote what he wrote.

As to this argument, plaintiffs assert that the law of New York must be followed because one of the plaintiffs resides in New York (although his claim is entirely derivative of a Nevada entity[2]) and New York was the jurisdiction where the action was first filed. Therefore, plaintiffs argue that this court must look to the law of the State of New York, and its choice of law jurisprudence in determining what law applies. Unsurprisingly, plaintiffs argue it is New York law, and that the California Anti-SLAPP statute therefore does not apply.[3]

Plaintiffs not only misstate New York law on privilege and its choice of law principles, but of equal importance they also ignore that the State of New York had no personal jurisdiction over Mr. Gorham. Since this issue had been raised when this action was in New York, plaintiffs were obliged to deal with it here as it affects the choice of law.

New York State does not have any interest in applying its laws over Mr. Gorham's California conduct because it had no right to entertain this action as to him in the first instance. Under those circumstances the law of the forum which *does* have jurisdiction applies its own choice of law regime over the forum where the action was initially filed. Applying its own choice of law jurisprudence, California would apply its law, in this case Civil Code § 47(b) and C.C.P.  § 425.16.

---

[2]    See Complaint at para. 2, pages 2-3.  Mr. Rinde is an "owner" of plaintiff CKR Advisors, Inc.  The Complaint alleges that CKR Advisors owns the stock certificate at issue in this case, Complaint at para 17, page 6, and that CKR Advisors is a Nevada corporation. *Id.* at para 3, page 4.

[3]    Defendant Gorham concedes that the New York Anti-SLAPP law would not permit him to strike the complaint since the New York statute is especially restrictive and does not protect conduct involving access to the courts.

1     While Mr. Gorham first raised the personal jurisdiction issue when he removed the

2 New York State court action to Federal court,[4] the issue became moot when the Southern

3 District of New York Bankruptcy Court transferred the action to the Central District of

4 California. But the presiding bankruptcy judge in New York acknowledged Mr. Gorham

5 had challenged personal jurisdiction and had made a "colorable claim" of "lack [of]

6 personal jurisdiction over him." That issue is now relevant again because of the choice of

7 law argument made by plaintiffs. Mr. Gorham submits his supplemental declaration on

8 these issues. It and the applicable law are discussed below.

9 **II.**

10 **MR. GORHAM'S COMMUNICATIVE CONDUCT DURING LITIGATION IS**
**ABSOLUTELY PRIVILEGED UNDER CIVIL CODE §47 (b), WHETHER**
11 **CHARACTERIZED AS "AIDING AND ABETTING" OR ANYTHING ELSE**

12     Plaintiffs spend much of the opposition discussing what they claim is misconduct by

13 Mark Crone about the Akoustis stock certificate, and the business entities in which Mr.

14 Crone was an owner. But all they can say about Mr. Gorham is that he "aided and abetted"

15 Mr. Crone – after the fact – by "negotiating" with Lawrence Tofel in New York:

16 "Plaintiffs' efforts to resolve the dispute were generally obstructed by Defendant *who was*

17 *expressly negotiating* for Crone's exclusive use of the proceeds of the shares' sales to

18 satisfy personal liabilities, including those to his ex-wife (defendant Susan Crone) . . ."

19 (Opposition, p. 4, line 24 to page 5, line 1; emphasis added.)

20     Plaintiffs cite to a telephone call from Mr. Gorham (*id.*, p. 5, lines 24-25), and

21 representations allegedly made by Mr. Gorham during discussions or in writings when

22 plaintiffs claim Mr. Gorham represented Ms. Crone[5] (*id.*, p. 6, lines 2, 6-12) as evidence of

23

---

24 [4]     Mr. Gorham removed the action before he was served. As it turns out, he was not served with process in this action until April 18, 2017 (56 days before Mr. Gorham filed his Anti-SLAPP

25 motion). See ECF 15, filed on May 2, 2017 showing service on April 18, 2017. By statute, Mr. Gorham had 60 days after service in which to file his special motion to strike . C.C.P. § 425.16(f).

26 [5]     Mr. Gorham denies he ever represented Ms. Crone. Plaintiffs claim Mr. Gorham made the

27 representation in writing but they have not provided any document from defendant to support their false claim. As Mr. Gorham explained in the declaration supporting his special motion to strike, he

28 called Mr. Tofel at his client's request and in response to a voicemail message Mr. Tofel had left
(Continued...)

4

Mr. Gorham's "aiding and abetting" conduct. Plaintiffs argue that these were "knowingly false representations" (*id.*, p. 11, line 22 to page 12, line 8). But it is clear that all of Mr. Gorham's conduct was communicative and related to (1) the pending Crone Chapter 7 bankruptcy, (2) one of the bankruptcy estate's potential assets, and (3) a possible adversary proceeding (relating to that asset).

Plaintiffs also argue that the statements weren't made in respect to pending or threatened litigation by eliding in their argument the non sequitur assertion that Mr. Gorham was acting for Ms. Crone (apparent possessor of the Akoustis stock certificate) rather than Mr. Crone (*id.*). Even if Mr. Gorham was representing Ms. Crone, it would still not advance plaintiffs' arguments; no matter whom Mr. Gorham was representing he was still speaking about matters involved in pending and threatened litigation.

In everything plaintiffs claim Mr. Gorham did, even accepting arguendo plaintiffs' malevolent attributions as to motive and falsity, plaintiffs demonstrate only that Mr. Gorham made statements about a subject of current and potential litigation – the Akoustis stock certificate.

The litigation privilege applies here because it "applies to communications preliminary[6] to a proposed judicial proceeding, such as a demand letter from an attorney to a potential adversary." *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 781, even if the communicative conduct includes false statements: "[T]he privilege is absolute and thus evidence of malice is irrelevant; the absolute privilege protects even statements which are false, fraudulent or motivated by malice." *Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 270, 68 Cal.Rptr.2d 305.  Of course, as Mr. Gorham

---

(...Continued)

for the client's ex wife. (See paragraph 10 of Gary J. Gorham Declaration dated June 12, 2017, at Special Motion to Strike, page 20, lines 5-11.)

[6]    "Preliminary" includes communications before litigation is pending or filed. *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322, fn. 11. So the new, unpleaded allegations about alleged conduct and communications by Mr. Gorham set forth in the Opposition (at page 4:11-16 [statements]; page 5:8-12 [filing a demand for arbitration following the New York state court's order that the parties arbitrate their dispute]; and page 5:15-16 [allegedly aiding the debtor in filing the bankruptcy petition]) also all constitute privileged conduct.

1  testified when he initially filed his motion, Mr. Gorham did nothing more than

2  inadvertently relay incorrect information concerning the location of the stock certificate,

3  information which was quickly corrected.[7]

4      Plaintiffs' make a brief and essentially citation-less argument that they can meet the

5  second prong of the Anti-SLAPP statute.  They base that assertion on two claims: First, that

6  New York law applies (Opposition, page 12, line 11 to page 13, line 10); and second, under

7  California law Mr. Gorham committed an intentional tort (*id.*, page 13, lines 12-25).

8  Plaintiffs' arguments are misguided because first, California law clearly applies (although

9  New York law also immunizes the conduct); and second, the California litigation privilege

10  immunizes all of Mr. Gorham's conduct, whether an intentional tort or otherwise.

11      As to the claim that Mr. Gorham committed an intentional tort, plaintiffs fail to

12  discuss the California litigation privilege or the relevant case law at all.  They simply ignore

13  the case law, previously cited, that immunizes communicative conduct in litigation from

14  tort liability, including "even statements which are false, *fraudulent* or motivated by

15  malice."  *Aronson v. Kinsella, supra,* 58 Cal.App.4th at 270 (emphasis added).  Thus,

16  plaintiffs appear to have generally conceded that if California law applies to Mr. Gorham's

17  communications, they are privileged and cannot support a tort claim.

18                                    **III.**

19  **NEW YORK LAW IS NOT APPLICABLE TO MR. GORHAM'S CONDUCT**

20  **A.**        **The New York State courts lacked jurisdiction over Mr. Gorham**

21      As set forth in the attached Supplemental Declaration of Gary J. Gorham, Mr.

22  Gorham is a resident of the State of California (Gorham Decl., para. 2).  He owns no

23  property and does not reside in New York (*id.*). While Mr. Gorham went to law school in

24  New York and clerked for a Federal judge there, he left New York in 1995 (*id.*, para. 4).

25  Mr. Gorham is not licensed to practice in the New York State courts (*id.*), has no business

26  _____

27  [7]        See paragraphs 10-18 of Gary J. Gorham Declaration dated June 12, 2017, at Special
Motion to Strike, pages 20-22; and paragraphs 3-5 of Leslie A. Cohen Declaration dated June 12,
28  2017 at page 16 of the Special Motion to Strike and Exhibit A.

1  interests in New York and derives no income from that state (*id*.).  Likewise, Mr. Gorham's

2  law firm has no offices in New York (*id*.).

3      All of Mr. Gorham's communications with Lawrence Tofel, plaintiffs' New York

4  counsel, occurred when Mr. Gorham was in California (*id*., paras. 5 & 6) and Mr. Gorham

5  never traveled to New York in connection with the underlying dispute (*id*., para. 7).  As to

6  the one prior dispute involving Mark Crone, Mr. Gorham's California client, that arose in

7  New York – because Mr. Tofel improperly filed a lawsuit there in the teeth of a mandatory

8  California-venued arbitration provision – Mr. Crone was represented in that matter while it

9  was in New York by New York counsel (*id*.).  Only when that action was ordered to

10  arbitration by the New York State court did Mr. Gorham become involved – by instituting

11  an arbitration before JAMS in California (*id*.).

12      It is clear that Mr. Gorham had no contacts with New York except those Mr. Tofel

13  importuned on him by virtue of Mr. Tofel being officed in New York and writing and

14  calling about a California client of Mr. Gorham's.

15      Under the requirements of "minimum contacts" explicated in *International Shoe Co.*

16  *v. Washington,* 326 U.S. 310 (1945) and its multitudinous progeny, Mr. Gorham's lack of

17  any business or personal contacts with the State of New York for the past two decades

18  would make a New York State court's general assertion of jurisdiction over him

19  unconstitutional.

20      Plaintiffs may wish to argue that Mr. Gorham's conduct was a tort that had an

21  "effect" in New York and that there is specific jurisdiction over him for his conduct. But

22  that argument is also is conclusively foreclosed to them under the holding in *The Eastboro*

23  *Foundation Charitable Trust v. Penzer*, 950 F.Supp.2d 648 (S.D.N.Y. 2013) and cases it

24  cites.

25      In *Eastboro*, plaintiffs brought an action against a New Jersey developer, Joshua

26  Rothenberg, and his attorney, Abraham Penzer, for various torts, including the "core

27  allegation" that Rothenberg transferred an asset to Penzer's New Jersey trust account,

28

1  which Penzer then paid to Rothenberg.  (950 F.Supp.2d at 651.)  Penzer moved to dismiss

2  the action as to him for lack of personal jurisdiction.

3          Even though Penzer was admitted as a lawyer in New York State and had appeared

4  there as recently as 1994 (*id.*, at 653), the court concluded that he did not practice in New

5  York since his law firm, its employees and the other accoutrements of a law practice were

6  all located in New Jersey. (*Id.*) As a result, New York did not have general jurisdiction over

7  him. (*Id.*, at 658.)

8          As to specific (transaction) jurisdiction, plaintiffs alleged there was one meeting in

9  New York to discuss the questioned transactions.  The court found the meeting was not

10  "sufficiently significant to establish a basis for personal jurisdiction." (*Id.*, at 661.)

11          The *Eastboro* Court also cited long standing New York law that contacts by out of

12  state lawyers with New York lawyers – including letters and telephone calls – is insufficient

13  to create jurisdiction in New York (*id.*, at 663), citing and quoting the holdings in, *inter*

14  *alia*, *Mayes v. Leipziger*, 674 F.2d 178, 185 (2d Cir.1982)[8] and *Forgash v. Paley*, 659

15  F.Supp. 728, 730-31 (S.D.N.Y.1987).[9] The holdings in those cases are conclusive: letters

16  and telephone calls to New York alone are insufficient to invoke in personam jurisdiction in

17  New York State.

18          As mentioned in the Introduction, when Mr. Gorham removed the state court action

19  to Federal court, he challenged the New York courts' assertion of jurisdiction over him. It

20  was a subject of the transfer motion when the case was pending in the Southern District of

21  New York's Bankruptcy Court and remarked upon by the New York bankruptcy court

22  judge. A true copy of the transcript of the New York bankruptcy court proceeding is

23

24  _____

[8]      "New York courts would [not] exercise jurisdiction solely on the basis that the defendants,
25  from California, . . . sought the wherewithal (i.e., funds, authority, and information) by means of
letters and calls to New York to perform their non-New York services."

26  [9]      "[A] defendant, absent other factors, will not be subject to suit in New York simply because
27  a New York resident solicited his services, or that the defendant placed telephone calls to and
corresponded with a New York business in connection with the purchase and sale of out-of-state
28  property."

1  attached to this Reply as Exhibit 1. This Court's attention is invited to page 24, lines 5-10

2  where Judge Stuart M. Bernstein mooted the jurisdiction claims by transferring the action:

> 3  The transfer will also serve the convenience of the parties and witnesses.
> 4  Mark [Crone], the principal witness, and his Trustee live in California.
> The Defendant Gorham is also a California resident and has raised
> 5  colorable arguments that the New York Courts lack personal jurisdiction
> 6  over him. [Transcript of hearing, Rinde v. Crone, USBC SDNY 17-
> 01055-smb, May 23, 2017.]

7

8  Thus, New York State courts did not have in personam jurisdiction over Mr.

9  Gorham, an issue preserved – and now relevant – in this Court.

10  **B. California law is applied where the transferor court lacks jurisdiction**

11  When the transferor court lacks personal jurisdiction, the law of the transferred

12  forum is applied as an initial matter as to choice of law. *Muldoon v. Tropitone Furniture*

13  *Co.*, 1 F.3d 964 (9th Cir. 1993).

14  In *Muldoon*, the plaintiff, an Illinois citizen, was a guest at a Marriott Hotel in San

15  Diego. He injured himself at the hotel and sued Marriott and the lounge chair manufacturer,

16  bringing the action in Illinois. The case was subsequently transferred to the Southern

17  District of California where the district court then applied California's statute of limitations.

18  An issue arose whether the transferor court had in personam jurisdiction in the first instance

19  (since application of Illinois' statute of limitations would lead to a different result).

20  The Ninth Circuit Court of Appeals vacated and remanded for a determination by the

21  district court of that issue, and whether it had been waived. But in so doing, the court held

22  that "if [defendants] have not waived any objection to the transferor court's in personam

23  jurisdiction, then *the choice-of-law rules of the transferee jurisdiction should be applied*."

24  1 F.3d at 967 (emphasis added). The *Muldoon* Court cited the Fifth Circuit's *per curiam*

25  decision in *Davis v. LSU*, 876 F.2d 412, 414 (5th Cir. 1989) with approval.

26  Here, of course, Mr. Gorham never waived the jurisdiction issue. He asserted it until

27  it became moot in New York.

28

## C. **California's choice of law principles would apply its law in this action**

California's choice of law jurisprudence applies a "governmental interest" analysis to determine which state has an interest in governing the conduct of the parties, *McCann v. Foster Wheeler, LLC* (2010) 48 Cal.4th 68, 75, 105 Cal.Rptr.2d 378, and if more than one does, next determining which state's interests would be minimally impaired by the application of the law of the other interested forum (*id.* at 88).

In this case, New York State simply has no interest in governing Mr. Gorham's conduct and so its law need not be consulted. See, e.g. *Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1454, 63 Cal.Rptr.3d 816 discussing that the other jurisdiction must be "potentially concerned" with the conduct.

Since New York has no jurisdiction over Mr. Gorham, and cannot be concerned with governing his conduct, it has no concern about what he does in California, for a California client, concerning a California bankruptcy proceeding, and a potential asset of that bankruptcy which is located in Nevada.

California, on the other hand, applies its statutes and rules and holds its licensed attorneys accountable, not only for their conduct in California, but for their out of state conduct as well. *In re Craig* (1938) 12 Cal.2d 93, 96, 82 P.2d 442. California thus has a strong interest in seeing to it that its laws as they govern attorney and litigation conduct are applied. This is especially true in the context of the litigation privilege, since it was enacted and has been interpreted

> to encourage parties to feel free to exercise their fundamental right of resort to the courts for assistance in the resolution of their disputes, without being chilled from exercising this right by the fear that they may subsequently be sued in a derivative tort action arising out of something said or done in the context of the litigation.

*Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 262, 68 Cal.Rptr.2d 305, citing *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal. App.4th 15, 29, 61 Cal. Rptr.2d 518.

1    New York cannot have a legally cognizable interest in governing the conduct of

2    those over whom it does not have jurisdiction.[10] Even if it did, we do not know from

3    plaintiffs' presentation whether there is even a conflict. Plaintiffs have failed to discuss *New*

4    *York's* litigation privilege in their Opposition despite partly captioning Part III A of their

5    argument with the claim that "The Conduct of Defendant is Not Privileged Under New

6    York Law."[11] This is puzzling since "[t]he first step in the analysis of an asserted conflict

7    of laws is to determine whether a choice of law by the court is actually required." *Nedlloyd*

8    *Lines B.V. v. Superior Court (Seawinds Ltd.)* (1992) 3 Cal.4th 459, 477, 11 Cal.Rptr.2d

9    330. Plaintiffs never took that step.

10    If plaintiffs had discussed New York law this Court would have been informed that

11    New York also acknowledges the litigation privilege. See, e.g., *Mosesson v. Jacob D.*

12    *Fuchsberg Law Firm*, 257 A.D.2d 381, 683 N.Y.S.2d 88, 89 (1999) ("[A] statement made

13    in the course of legal proceedings is absolutely privileged if it is at all pertinent to the

14    litigation."). New York's highest court has also held that statements made in good faith

15    anticipation of litigation are also absolutely privileged. *Front, Inc. v. Khalil*, 24 N.Y.3d 713,

16    715. 719-720, 28 N.E.3d 15, 4 N.Y.S.3d 581 (2015). Calling Mr. Gorham's conduct "aiding

17    and abetting" (Opposition, p. 8, lines 4-5), is intellectually disingenuous when it consisted

18    solely of "absolutely privileged" litigation communications under New York law.

19    Turning to the California Anti-SLAPP statute, it evokes strong public policy

20    concerns. The Second Circuit Court of Appeals, when recently weighing California and

21    New York law on that point, has held that California courts would apply the California

22    Anti-SLAPP statute under a governmental interest analysis when determining whether to

23    apply California or New York law. See *Liberty Synergistics, Inc. v. Microfold Ltd.*, 718

---

[10]    See discussion in subpart D, below, at p. 13, concerning *GlobalNet Financial.com v. Frank Crystal & Co.*, 449 F.3d 377 (2nd Cir. 2006).

[11]    The heading appears at Opposition, page 7, line 18. The argument continues for the next two pages, mentions that New York has a different Anti-SLAPP law (*id.*, page 9, lines 1-9), mentions that in New York "aiding and abetting" is actionable (*id.*, page 9, line 10 to page 10, line 5), but never mentions the parameters of New York's litigation privilege or discusses it at all.

1  F.3d 138, 147-148.  Reversing the district court, the Court of Appeals explained the strong

2  California interests as follows:

> The nature of the anti-SLAPP rule is clear. According to the Supreme
> Court of California, "[t]he point of the anti-SLAPP statute is that you
> have a right not to be dragged through the courts because you exercised
> your constitutional rights." Varian Med. Sys., Inc. v. Delfino, 35 Cal.4th
> 180, 193, 25 Cal.Rptr.3d 298, 106 P.3d 958 (2005) (quotation marks
> omitted). Accordingly, " '[t]he protections afforded by the anti- SLAPP
> statute against the harassment and burdens of litigation are in large
> measure lost if the petitioner is forced to litigate a case to its conclusion
> before obtaining a definitive judgment through the appellate process.'
> [¶] California's anti-SLAPP rule reflects a substantive policy favoring
> the special protection of certain defendants from the burdens of
> litigation because they engaged in constitutionally protected activity.

## D. **New York choice of law principles also would apply California law**

Even if New York choice of law rules were to apply, plaintiffs' claims must be

determined under the substantive law of California because Mr. Gorham's conduct

definitionally implicates "conduct-regulating" laws.

New York choice of law principles require an "interest analysis" to determine which

jurisdiction has the greatest interest in the dispute. *Schultz v. Boy Scouts of Am., Inc.*, 65

N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985). "The law of the jurisdiction

having the greatest interest in the litigation will be applied." *Licci ex rel. Licci v. Lebanese*

*Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (quotation and citations omitted).

"Interest analysis is a flexible approach intended to give controlling effect to the law of the

jurisdiction which, because of its relationship or contact with the occurrence or the parties,

has the greatest concern with the specific issue raised in the litigation." *Id.* at 157-58

(quotation and citations omitted).

"In tort-law disputes, interest analysis distinguishes between two sets of rules:

conduct-regulating rules and loss-allocating rules." *Licci*, supra at 158. Conduct-regulating

rules are those that "people use as a guide to governing their primary conduct," *K.T. v.*

*Dash*, 37 A.D.3d 107, 112, 827 N.Y.S.2d 112, 117 (1st Dep't 2006), while "[l]oss allocating

rules . . . are laws that prohibit, assign, or limit liability after the tort occurs," *DeMasi v.*

1  *Rogers*, 34 A.D.3d 720, 721, 826 N.Y.S.2d 106, 108 (2d Dep't 2006) (internal quotation

2  marks omitted).

3         The alleged fraud and misrepresentation claims against Mr. Gorham are based on

4  conduct-regulating rules. See *AHW Inv. Partnership v. Citigroup Inc.*, 980 F. Supp. 2d 510,

5  522 (S.D.N.Y. 2013) (explaining that negligent misrepresentation claims are based on

6  conduct regulating rules), *aff'd sub nom. AHW Inv. Partnership, MFS, Inc. v. Citigroup

7  Inc.*, 661 F. App'x 2 (2d Cir. 2016). "If conflicting conduct-regulating laws are at issue, the

8  law of the jurisdiction where the tort occurred will generally apply because that jurisdiction

9  has the greatest interest in regulating behavior within its borders.'" *GlobalNet

10  Financial.com v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2nd Cir. 2006), quoting *Cooney

11  v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 922, 612 N.E.2d 277, 280

12  (1993)).

13         In this case, the alleged tort occurred where Mr. Gorham was located, not where the

14  plaintiffs allegedly sustained their injuries. For example, in *Licci,* the Second Circuit

15  analyzed New York's choice of law principles in a tort claim against American Express,

16  which was based in New York, brought by Israeli plaintiffs who alleged that American

17  Express facilitated wire transfers of funds to Hezbollah, which used the money to conduct

18  rocket attacks in Israel, injuring the plaintiffs. Plaintiffs asserted that Israeli law governed

19  their claims because they were injured there; American Express argued that New York law

20  applied. The Second Circuit held that the claims were based on conduct-regulating rules,

21  namely "the scope of a bank's duty to protect third parties against intentional torts

22  committed by the bank's customers." *Licci,* 672 F.3d at 158. The court further held that the

23  location of plaintiffs when they suffered the injury did not control the outcome because

24  New York had the greater interest in regulating the conduct of banks located in New York.

25  *Id. See also AHW Inv. Partnership, supra,* 980 F. Supp. 2d at 524 (finding that the goal of

26  deterring misrepresentations is "best served by applying the law of the site of the

27  misrepresentations [rather] than by applying the law of the site of the loss.")

28

1    This principle unquestionably applies with respect to attorneys. In *Cobalt*
2  *Multifamily Inv'rs I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 433 (S.D.N.Y. 2012), the United
3  States District Court for the Southern District of New York, applying New York choice of
4  law principles, found that claims against law firms alleging their participation in a fraud
5  perpetrated by their client are governed by the substantive law of the jurisdiction where
6  those firms maintained their offices and were authorized to practice law. *Id.* at 433. In doing
7  so, the court explained that the allegedly tortious conduct occurred in the jurisdiction where
8  the attorneys were located. *Id.* Moreover, the jurisdictions where they were located had a
9  greater interest in "regulating the conduct of the law firms and lawyers licensed to practice
10  within [their] borders." *Id.*

11    Mr. Gorham's conduct at issue indisputably occurred while Mr. Gorham was located
12  in California. More importantly, California has a greater interest in regulating Mr.
13  Gorham's conduct as an attorney than New York. Therefore, New York's conflict of laws
14  principles mandate that California's substantive law applies.

15    Because California substantive law applies to the claims, it also applies to defenses,
16  including the protections of the Anti-SLAPP law. California has the greater interest in
17  restricting litigation that is directed toward suits against California attorneys that may chill
18  the zealous representation of clients in that jurisdiction. More generally, the jurisdiction that
19  has the greatest interest in the underlying claim also has "an acute interest in the availability
20  of defenses to those claims." *Cobalt Multifamily Inv'rs, supra,* 857 F. Supp. 2d at 434.

21    While Mr. Gorham disputes that New York law has to be considered at all because
22  the New York courts did not have jurisdiction over him in the first instance, if New York's
23  conflict of laws principles did apply, this Court should engage in an "interest analysis" and
24  determine that based on the "conduct-regulating" nature of California's laws, those laws
25  (Civil Code § 47(b) and C.C.P. §425.16) should be applied here.

26

27

28

14

1

2                         **IV.**

3                   **CONCLUSION**

4     The special motion to strike should be granted.

5     Despite the prolixity of plaintiffs' presentation, including irrelevant declarations and

6 exhibits, they have not demonstrated that Mr. Gorham's conduct was anything but litigation

7 and pre litigation communicative conduct. Such conduct is absolutely protected by Civil

8 Code § 47(b). It is also clear that this adversary proceeding is a SLAPP seeking to punish

9 Mr. Gorham for representing a client's interests. As a result this action is subject and

10 should be stricken pursuant to the provisions of C.C.P. §425.16.

11 Dated: June 17, 2017

                        Respectfully submitted,

                        GARFIELD & TEPPER
                        A Partnership of Professional Corporations

                        By _____
                                SCOTT J. TEPPER
                        Attorneys for Defendant Gary Gorham

## SUPPLEMENTAL DECLARATION OF GARY J. GORHAM

Gary J. Gorham declares:

1.    I am an attorney, admitted and licensed to practice law in the State of California.    I am a defendant in this adversary proceeding. I submit this supplemental declaration in support of my special motion to strike relating to the issue of "choice of law" raised by plaintiffs in their opposition thereto.    I understand the issue is whether California or New York law applies to this action and, specifically, whether California's litigation privilege and anti-SLAPP law governs and protects my conduct in this action.

2.    I am a resident of the State of California. I own no property in the State of New York, and do not reside there, either permanently or temporarily.

3.    I am not licensed to practice law in the State of New York (or any state other than California). I have no business interests in the State of New York, and I derive no income from business activities – in the legal profession or otherwise – in the State of New York. My law firm has no office in the State of New York.

4.    I did grow up in upstate New York, and attended Syracuse University College of Law, graduating in 1993. After graduating I clerked for two years for Hon. Howard G. Munson, in the United States District Court for the Northern District of New York.    Toward the end of my tenure in that position I was admitted to the bar of the Northern District of New York, but I have never appeared in any action in that district.    I moved to Los Angeles, California in 1995, and have lived and practiced law in Los Angeles ever since.

5.    While I vigorously dispute the histrionic and false claims against me in plaintiffs' complaint, at all times during the conduct alleged in the complaint I was physically located in the State of California. Specifically, I have never spoken with plaintiffs' counsel from any location other than the State of California.

6.    All of plaintiffs' counsel's emails to me were sent to, and received at, my work email at my law firm in the State of California. To the extent that I responded to plaintiffs' counsel's emails, I did so only from the State of California.

16

7.    I never travelled to New York in connection with the matters alleged in the Complaint, nor did I meet with anyone in New York in connection with the matters alleged in the Complaint.  As I have testified in my initial declaration, I initiated an arbitration proceeding on behalf of Mr. Crone, at JAMS in Los Angeles, California.  Mr. Crone had other counsel in the prior New York action against him, which was sent to arbitration in California, as the parties' agreement provided.

8.    In short, I was in California, representing a California client who was the debtor in a California bankruptcy action, concerning a potential asset of the bankruptcy estate (which itself is apparently located in the State of Nevada). The only connection I have to New York is that Lawrence Tofel initiated his inquiries and wrote and called from New York City, and I responded to him concerning the California bankruptcy and my client, a California resident.

9.    When this action was pending in New York, I was represented by New York counsel.  We challenged the jurisdiction of the New York courts to exercise in personam jurisdiction over me. At the hearing in the Southern District of New York Bankruptcy Court when this action was transferred to California, Judge Stuart M. Bernstein stated:

> The transfer will also serve the convenience of the parties and witnesses. Mark [Crone], the principal witness, and his Trustee live in California. The Defendant Gorham is also a California resident and has raised colorable arguments that the New York Courts lack personal jurisdiction over him.

Transcript of Hearing, Rinde v. Crone, USBC SDNY 17-01055-smb, May 23, 2017, page 24:5-10.

10.    A true copy of the entire aforesaid transcript is attached to this declaration as Exhibit 1.

I declare, under penalty of perjury under the laws of the United States, that the foregoing is true and correct and that this declaration is executed this 14th day of July, 2017 at Los Angeles, California.

GARY J. GORHAM

**EXHIBIT  1**

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 17-01055-smb

4   - - - - - - - - - - - - - - - - - - - - - - - - - x

5   RINDE et al.,

6                   Plaintiff,

7           v.

8   CRONE et al.,

9                   Defendants.

10  - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  U.S. Bankruptcy Court

13                  One Bowling Green

14                  New York, NY  10004

15

16                  May 23, 2017

17                  10:38 AM

18

19

20

21  B E F O R E :

22  HON STUART M. BERNSTEIN

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  KAREN

1    Hearing re:  Motion to Transfer Venue

2

3    Hearing re:  Joint Motion to Extend Time for Defendants Gary

4    Gorham and Susan Crone to Answer or otherwise Respond to

5    Complaint

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    ELLENOFF GROSSMAN & SCHOLE LLP

4         Attorneys for Susan Crone

5         1345 Avenue of the Americas

6         New York, NY 10105

7

8    BY:  JOHN BRILLING HORGAN

9

10   HALPERIN BATTAGLIA BENZIJA, LLP

11        Attorneys for Jeffrey Rinde, CKR Global Adviros

12        40 Wall Street, 37th Floor

13        New York, NY 10005

14

15   BY:  WALTER BENZIJA

16

17   RIKER DANZIG SCHERER HYLAND PERRETTI LLP

18        Attorneys for Gary Gorham

19        500 Fifth Avenue

20        New York, NY 10110

21

22   BY:  GREGORY A. BLUE

23

24

25

**Page 4**

1   LAWRENCE E. TOFEL, P.C.

2        Attorneys for Global Advisors

3        163 Washington Avenue, Suite 5B

4        Brooklyn, NY 11205

5

6   BY:   LAWRENCE E. TOFEL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2              THE COURT:  "Rind," or "Rinday," versus Crone.

3    How is it pronounced?

4              MR. BLUE:  Rinde, Your Honor.

5              THE COURT:  Rinde?  Okay.

6              MR. BLUE:  Good morning, Your Honor.  Gregory

7    Blue, Riker, Danzig, Scherer, Hyland & Perretti, for the

8    Defendant, Gary Gorham.

9              THE COURT:  Good morning.

10             MR. HORGAN:  Morning, Your Honor.  John Horgan

11   from Ellenoff Grossman & Schole for Defendant Susan Crone.

12             THE COURT:  Has she answered?

13             MR. HORGAN:  No, Your Honor.  We have had a motion

14   -- one of the motions that's on today is a joint motion by

15   Mr. Gorham and Ms. Crone to extend their time for answering

16   or moving in response to (indiscernible).

17             THE COURT:  Okay, but she was served, right?

18             MR. HORGAN:  She was.  Well, for the purposes of

19   this, we'll say she was served on April 18.

20             THE COURT:  But I mean she was served with the

21   summons and complaint in State Court, wasn't she?

22             MR. HORGAN:  Yes, Your Honor.

23             THE COURT:  All right.

24             MR. BENZIJA:  Good morning, Your Honor.  Walter

25   Benzija, Halperin Battaglia Benzija, on behalf of CKR Global

1    Advisors and Jeffrey Rinde.

2            MR. TOFEL:  Good morning, Your Honor.  Lawrence

3    Tofel of Lawrence Tofel PC for Mr. Rinde and Global

4    Advisors.

5            THE COURT:  Morning.

6            MR. TOFEL:  Good morning.

7            THE COURT:  Let me hear the venue motion.

8            MR. BLUE:  Yes, Your Honor.  Gregory Blue.  That's

9    my venue motion.

10           THE COURT:  Okay.

11           MR. BLUE:  Your Honor, the case belongs in

12   California, as we've laid out in our papers.  The basis for

13   removal in the first instance was that the claims here were

14   very likely to have an effect on the bankruptcy of Mark

15   Crone pending in the Central District of California.

16           THE COURT:  How will they affect the Crone

17   bankruptcy?

18           MR. BLUE:  Well, there are a number of ways in

19   which they'll affect it that have been highlighted in the

20   last few days by the fact that the Trustee in that case has

21   brought a claim saying that the very stock certificate --

22   the stock that's at issue in this case should not be taken

23   by the Plaintiffs here and sold because that will have a

24   detrimental effect on the estate.

25           THE COURT:  Well, are you saying that the Akoustis

Page 7

1   -- that's A-K-O-U-S-T-I-S -- stock is property of Mark

2   Crone's estate?

3           MR. BLUE:  As to what I'm saying for the purposes

4   of today, Your Honor, I don't know the answer to that.  But

5   I do know that there are claims that the Akoustis stock may

6   be.  So, for instance, in the complaint that was brought in

7   the State Court action, said there are contradictory things

8   said in the bankruptcy schedules.

9           THE COURT:  I've read the State Court complaint.

10          MR. BLUE:  Right.

11          THE COURT:  I know the Trustee's position in the

12   State Court complaint.

13          MR. BLUE:  Sure.  So, I think it's fair to say

14   that what exactly was transferred to Susan Crone is not

15   really clear from what was in the bankruptcy schedules of

16   Mr. Crone, from what was in the divorce proceeding, what was

17   transferred.  But what I will say is --

18          THE COURT:  But he didn't transfer the Akoustis

19   stock.  He didn't own it.

20          MR. BLUE:  Well, but --

21          THE COURT:  He transferred his interest in Global

22   Advisors, as --

23          MR. BLUE:  Well, but there's another factor here,

24   which is that he -- there's no dispute, and I think what

25   gave rise to this is he actually transferred physical

1    possession of the stock certificate to Susan Crone, which

2    indicates to me that he believed he had some sort of

3    possessory right to the stock certificate, and thus the

4    ability to physically transfer that to Susan Crone.

5           Now, he may or may not have.  But I think that

6    whether he did have the right, because he had some

7    possessory interest in it, is something that should be

8    decided in the context of his bankruptcy case.

9           THE COURT:  Mm hmm.  Okay.  But tell me -- all

10   right, that's the jurisdictional issue.  Tell me why it's in

11   the best interests of the parties and the witnesses to

12   transfer.

13          MR. BLUE:  Sure.  Your Honor, the best interest of

14   the parties and witnesses is that Mr. Gorham, who I

15   represent, I'm most concerned with here, is --

16          THE COURT:  Who did he represent in this?

17          MR. BLUE:  He represented Mark Crone, early on.

18   He filed the arbitration in California and represented Mark

19   Crone.  He's a California attorney.  He does not have a

20   connection to New York.  Mr. Crone, obviously, is in

21   California, who, at the center of all these allegations, is

22   going to be essential to determining these.

23          Now, with the filing of the Trustee's complaint,

24   Susan Crone was named as a Defendant.  She certainly will

25   already be in the Central District of California, defending

1    the Trustee's complaint.  The Trustee also named the

2    corporate entity here, which will already be in the Central

3    District of California and will need to litigate those

4    issues there, not to mention the fact that --

5              THE COURT:  Central District.

6              MR. BLUE:  Central District, I apologize, and not

7    to mention that the two Plaintiffs here put in a notice of

8    appearance in the Central District of California.  There's

9    no doubt that, because of the Trustee's complaint, these

10   issues are going to be litigated there.  Whatever the merits

11   of the Trustee's claim, whatever the ultimate resolution,

12   they will be there.

13             It frankly makes no sense to have it litigated

14   there and here, whether in Bankruptcy Court or State Court.

15   It's a waste of judicial resources, it's a great imposition

16   on the parties, and the case should be transferred to the

17   Central District of California.

18             THE COURT:  Thank you.

19             MR. BENZIJA:  Thank you, Your Honor.  We obviously

20   disagree with the statement, with respect to both the

21   jurisdictional and the best interest.  On the jurisdictional

22   side, Your Honor, I believe the waters have been quite

23   muddied here.  But, at the heart of it, the action that was

24   filed before Justice Ramos in State Supreme Court against

25   Susan Crone and her lawyers involved an effort by a non-

1   Debtor here, Global Advisors, to take possession of its

2   property, the stock certificate of Akoustis.

3            THE COURT:  What's it going to do with the

4   property?

5            MR. BENZIJA:  Once it obtains -- once the entity,

6   the non-Debtor here, obtains the stock certificate, it will,

7   pursuant to state law, seek a wind-down of its affairs, and,

8   in so doing, liquidate its assets.

9            THE COURT:  But don't you need a majority vote of

10   shareholders to wind down the affairs?  And how can you do

11   that?

12            MR. BENZIJA:  Yes, Your Honor.  And that is a

13   sticking point with respect to the ultimate wind-down.  But

14   the point here is that it will be done in accordance with

15   the state law proceedings.  It is, in essence, a dispute

16   between non-Debtors.

17            What the Trustee and what Mr. Crone is attempting

18   to do here is to interject a possibility that, at best, Your

19   Honor -- and I'm going to explain the other issue as well,

20   but that --

21            THE COURT:  The jurisdictional issue is

22   conceivable effect.

23            MR. BENZIJA:  Right.

24            THE COURT:  I agree with you that the Akoustis

25   stock is not property of Mark Crone's estate.  But that

1    doesn't mean that it's not -- the dispute in this case is

2    not related to his bankruptcy case.

3              MR. BENZIJA:  Your Honor, the only -- the

4    distinction I'm going to make is that, look, the Trustee has

5    to take its Debtor as he finds him.  As of the -- as of this

6    time, that interest in the stock, meaning the interest in

7    Global, which owns the stock, was transferred to Ms. Crone,

8    pursuant to a marital settlement agreement in Connecticut

9    Court.  At the moment, all the Trustee has is a potential

10   action to try to undo the transfer that was effectuated

11   through that.

12             THE COURT:  So, why couldn't that have a

13   conceivable effect on the (indiscernible)?

14             MR. BENZIJA:  Well, here's why.

15             THE COURT:  It's a very low threshold.

16             MR. BENZIJA:  Absolutely, Your Honor.  It is an

17   extremely low threshold.  And the argument there is that, if

18   the Trustee succeeds and obtains the shareholder interest in

19   Global, then it becomes a shareholder of a non-Debtor.  And

20   it has its rights, pursuant to state law, with respect to

21   what any other shareholder would have.  Does that

22   shareholder have a right to direct or to otherwise interject

23   itself within the context of wind-down or liquidation?

24             THE COURT:  Well, I haven't seen the articles of

25   incorporation, but what -- your ultimate problem is you

1    don't have a majority vote.  And I don't know if you're ever

2    going to be able to get a majority vote.

3            MR. BENZIJA:  One of the allegations that have

4    been made in the complaint that was recently filed in the

5    Central District of California was that, as a result of Mark

6    Crone's unilateral, and we believe ultra vires, act of

7    changing the name of Global Advisors to Ascendant, and also

8    changing the identity of the directors and the officers,

9    that somehow now that entitles the Trustee to step into the

10   shoes of Mr. Crone as management, which gives him further

11   rights.

12           THE COURT:  The Trustee's theory is to avoid the

13   transfer of his interest in Global Advisors.  If he is

14   successful in that, then, presumably, he has the management

15   and economic rights that Mr. Crone would have in Global

16   Advisors, right?

17           MR. BENZIJA:  Except, Your Honor, that, in this

18   case, there's more history here that the Trustee does not

19   cite in his complaint.

20           THE COURT:  Well, I've read all the papers.  I

21   understand the history.

22           MR. BENZIJA:  Well, there's a waiver issue, Judge,

23   that wasn't yet briefed, because this was obviously in

24   response to the complaint.  We haven't been heard.

25           THE COURT:  What's the waiver issue?

1          MR. BENZIJA:  This issue, Mr. Rinde's and Global

2      Advisors' trick to try to get back the stock certificate,

3      goes back to about a year worth of litigation.

4          THE COURT:  Oh.  Oh, okay, I see.

5          MR. BENZIJA:  The initial action was against Mr.

6      Crone, before Justice Ramos.  That was eventually sent to

7      arbitration.  But the point is that, during that time, and

8      during any subsequent litigation, particularly in the

9      District Court, not one mention, not one issue was raised

10     over Mr. Rinde's ability to represent Global Advisors or his

11     authority to do so.

12         In fact, the same counsel appeared -- Mr. Blue

13     appeared in both instances there.  And not one issue was

14     raised.  And, Judge, in that case, why wouldn't have Mr.

15     Crone, in the initial action, said, "This action needs to be

16     cut off at its knees; I'm management and I don't agree with

17     selling the stock"?  But it wasn't, Your Honor.

18         And that waiver issue is an important one,

19     particularly from the standpoint of, if this action is

20     defended, there will be witnesses that are here now that

21     will need to be implicated in that.

22         THE COURT:  You hadn't mentioned in your papers.

23         MR. BENZIJA:  No, Your Honor.  We -- in that

24     instance --

25         THE COURT:  You know, this is a motion to transfer

Page 14

1   venue, and you can't just say, in response, "There are

2   witnesses."

3          MR. BENZIJA:  No, no, I agree, Your Honor.  We did

4   it in response to the Trustee's action, which had not yet

5   been filed by the time that we filed our papers.  So, we beg

6   the Court's indulgence with respect to that particular

7   issue.

8          But that clouds the Trustee's complaint, in my

9   mind, and certainly takes it away from the relatedness, even

10  at the lowest threshold, because, at the end of the day, if

11  this non-Debtor entity obtains its property, everyone's

12  rights are preserved.  There's not an issue of where, if the

13  Trustee is successful, somehow he will be prejudiced by any

14  action that's taken thereafter.  He has recourse.

15         If he believes that there is not a proper Creditor

16  to be paid, that Creditor, meaning the law firm in this

17  case, is an entity that's still going on, has 30 offices

18  around the world; there is recourse.  But to drag it into

19  the Central District of California --

20         THE COURT:  It's already there.  The Trustee has

21  sued.

22         MR. BENZIJA:  He has sued.  And we'll have to deal

23  with that, Your Honor, for sure.  Yeah, the lawsuit was just

24  recently commenced, but yes.

25         THE COURT:  Yeah, I know.

1        MR. BENZIJA:  Yes.  But the -- you know, and I

2    understand, Your Honor, the low threshold.  But, at the end

3    of the day, this has been a year and a half effort by the

4    company to retain its property, which everyone here

5    recognizes.  And I don't think the Trustee has even alleged

6    that somehow anyone other than the company, the non-Debtor

7    here, owns the actual stock certificate.

8        Is there a question about relative interest?

9    Perhaps, but I submit that that relative interest is as

10   between Mr. Crone and Mrs. Crone.

11       THE COURT:  Well, it's between the Trustee and

12   Mrs. Crone.

13       MR. BENZIJA:  The Trustee, I'm sorry, Your Honor.

14   That's correct.  So, on that basis, to transfer and to make

15   this a related matter, I think, is a stretch, Your Honor.

16       THE COURT:  Mm hmm.

17       MR. BENZIJA:  And, to just -- I was just informed

18   that Mr. Gorham as well represents Susan Crone in this case

19   as well.  So, there is -- certainly there's a connection

20   there, which would justify leaving it here.

21       And, of course, Your Honor, just a note on the

22   procedure:  we have made a motion to remand.  We asked for

23   short notice and that was denied, and then we subsequently

24   noticed that for a hearing on June 6th, pursuant to the

25   notice rules.  I would submit, Your Honor, that, whatever

1   the decision might be here today on venue, that, because

2   there is a live controversy or live question of the subject

3   matter jurisdiction in the Bankruptcy Court, that we -- that

4   the decision be reserved until such time as (indiscernible).

5              THE COURT:  But I have to make that same decision

6   in connection with whether there's Bankruptcy jurisdiction

7   in response to this motion.  It's -- the jurisdictional

8   argument is the same argument.

9              MR. BENZIJA:  (indiscernible)  And the

10  jurisdictional argument is the principal argument that we

11  have with respect to (indiscernible).

12             THE COURT:  Right.  All right.  Anything else?

13             MR. BLUE:  Yeah, extremely briefly, Your Honor,

14  two things, one on the waiver argument, because I was

15  involved in the earlier case.  I will tell you that our

16  papers in that case did raise the issue that there was

17  equally divided ownership of the corporate entity and

18  questioned how the entity could have authority to bring the

19  case.

20             And that sort of remains in the background here,

21  too.  The Trustee claims that he controls the Plaintiff

22  here.  That has to be decided to see whether --

23             THE COURT:  He doesn't control him.  Again, you

24  would have recover and void the transfer.

25             MR. BLUE:  Correct.  And I completely agree, Your

1    Honor.  And I think I'll leave it at that.  Thank you.

2              THE COURT:  Okay.  That's it.

3              MR. HORGAN:  Your Honor?  Your Honor, if I might

4    make one small point?

5              THE COURT:  Sure.

6              MR. HORGAN:  Gary Gorham does not represent Susan

7    --

8              THE COURT:  Pardon?

9              MR. HORGAN:  Gary Gorham does not represent Susan

10   Crone.  Ellenoff Grossman & Schole does.  Thank you.

11             MR. TOFEL:  Your Honor, if I could just be heard

12   briefly?  Two things, in reverse order.  Mr. Gorham, who, no

13   question, represented Mr. Crone in the year of litigation,

14   when we reached out for Mrs. Crone after the filing of the

15   second State Court complaint, he advised us that he

16   represented Susan Crone.  His conduct -- he is a Defendant

17   in this case because of his conduct on behalf of Mrs. Crone,

18   at least according to him.

19             Secondly, with due respect to Mr. Blue, who I have

20   high regard for personally --

21             THE COURT:  Yeah, I read the transcript of your

22   last phone conversation.  I know you have high regard for

23   him.

24             MR. TOFEL:  No, no, but my point is --

25             THE COURT:  When somebody says that, I say, "Look

Page 18

1    out."

2            MR. TOFEL:  No, no, no.  I'm being genuine, Your

3    Honor.  Mr. Blue and I have had a number of conversations.

4    I have great respect for him personally.

5            THE COURT:  But.

6            MR. TOFEL:  I disagree with him professionally,

7    but that -- but there are -- in point of fact, I think Mr.

8    Blue is incorrect when he says that the issue of Global

9    Advisors' authority to act at the direction of Mr. Rinde was

10   raised in the prior litigation.  And there have been two

11   injunctions issued --

12           THE COURT:  I'm not deciding that issue.

13           MR. TOFEL:  Right.

14           THE COURT:  That issue will have to be -- I guess

15   will have to be decided, to the extent it's an issue.  But

16   it doesn't implicate what I have to decide in terms of the

17   change of venue motion.

18           MR. TOFEL:  Well, I only think that it impacts on

19   the Trustee -- the bona fides or merits of the Trustee's

20   complaint, which are conspicuous in its absence from when he

21   referenced it.

22           THE COURT:  Then somebody will make a motion, if

23   it's appropriate, to dismiss the complaint.

24           MR. TOFEL:  At the appropriate time, if we are

25   served, we'll deal with that.

Page 19

1    THE COURT:  Right.

2    MR. TOFEL:  I just want the Court to be aware of

3 all of the facts, that there have been two injunctions

4 issued where Mr. Crone never raised the issue.

5    THE COURT:  All right.  Thank you.  Mark Crone,

6 herein after Mark, and Plaintiff Jeffrey Rinde were partners

7 in a law firm, CKR Law.  They were also equal shareholders

8 in Plaintiff CKR Global Advisors, herein after Global

9 Advisors, a Nevada Corporation.

10    Through a series of transactions that Rinde

11 challenges, Mark changed the name of Global Advisors to

12 Ascendant Global Advisors in his alleged capacity as

13 president and sole director of the company.  I will continue

14 to refer to Global Advisors, which will include the

15 correctly named corporation, whatever that turns out to be.

16    Rinde contends that he and Mark are equal owners

17 of Global Advisors, and that he, Rinde, is the president and

18 director.  Global Advisors' sole asset is the ownership of

19 100,000 shares of Akoustis Technologies, Inc., herein after

20 Akoustis, a public company currently trading on NASDAQ at

21 approximately $10 per share.  Thus, Global Advisors'

22 Akoustis stock is worth roughly $1 million.

23    Susan Crone, herein after Susan, is Mark's ex-

24 wife.  And Leonidas Flangas was or is Susan's lawyer.

25 Flangas is currently in possession of Global Advisors'

Page 20

1    Akoustis stock certificate.

2           Defendant Gary Gorham, the Movant herein, was

3    Mark's attorney.  Finally, Mark is a Chapter 7 Debtor in a

4    case pending in the Central District of California before

5    Bankruptcy Judge Barry Russell.

6           Prior to Mark's Bankruptcy, he and Susan were

7    parties to divorce litigation in Connecticut.  It appears

8    that, as part of the resolution of their matrimonial

9    dispute, Mark transferred his interest in Global Advisors to

10   Susan.

11          In April 2017, Rinde and Global Advisors commenced

12   this lawsuit in State Court against Susan, Gorham, and

13   Flangas.  The object of the lawsuit is to recover possession

14   of the Akoustis stock by Global Advisors and sell it, and

15   recover money damages in connection with their conspiracy to

16   deny Global Advisors its rights.  Gorham removed the action

17   from the State Court to the District Court, and the District

18   Court referred the matter to this Court.

19          Gorham has now moved to transfer the case -- the

20   adversary proceeding to the California Bankruptcy Court, in

21   the interest of justice and the convenience of the parties

22   and witnesses.  The Plaintiffs oppose the motion, arguing

23   that the Bankruptcy jurisdiction is lacking, and, even if

24   jurisdiction existed, transfer is not warranted.

25          The Plaintiffs have also filed a motion to remand

1   this adversary proceeding to the State Court, but I declined

2   to consider on it -- consider it on an expedited basis, for

3   the reasons stated in a memorandum endorsement.

4          In the meantime, Marks' Chapter 7 Trustee, Howard

5   Ehrenberg, herein after the Trustee, commenced an adversary

6   proceeding in California Bankruptcy Court on May 17, 2017,

7   against Susan and Global Advisors.  The Trustee contends, in

8   the main, that Mark's transfer of his interest in Global

9   Advisors to Susan was fraudulent.  He also contends, among

10  other things, that Rinde has unilaterally made the decision

11  to sell Global Advisors' Akoustis stock and use the proceeds

12  to pay debts that are unenforceable against Global Advisors.

13         He further maintains that the value of the

14  Akoustis stock may increase in value, and its immediate sale

15  and Rinde's plan to wind down Global Advisors will cause

16  immediate and irreparable harm to Mark's estate.

17         Thus, he seeks to avoid the transfer of Mark's

18  interest in Global Advisors and recover that interest for

19  the benefit of the estate, and to obtain a declaratory

20  judgment that he as Trustee is Global Advisors' sole officer

21  and director, with the exclusive power to govern Global

22  Advisors and to enjoin the sale of the Akoustis shares

23  and/or using Global Advisors' assets to pay what he claims

24  are unenforceable debts.

25         I agree with the Plaintiffs that the Akoustis

1    stock is not property of Mark's estate.  It is Global

2    Advisors' property.  Nevertheless, the adversary proceeding

3    is related to Mark's bankruptcy within the meaning of 28 USC

4    Section 13.34.  Of course it will have a conceivable effect

5    on Mark's bankruptcy case, say -- see In Re Cuyahoga, C-U-Y-

6    A-H-O-G-A, Equipment Corporation, 980 F2nd 110 at Page 113,

7    Second Circuit 1992.

8         At issue is who has the right to control Global

9    Advisors and the disposition of its sole asset, the Akoustis

10   stock.  Rinde owns one-half of Global Advisors, but either

11   Susan or Mark's estate own the other half.  And questions

12   surrounding the respective rights of the estate and Susan in

13   Global Advisors, and the Trustee's right to manage and

14   control it, and specifically his power to control the

15   disposition of the Akoustis stock, are in dispute.

16        The outcome of this dispute will have a

17   conceivable effect on Mark's estate because Rinde's efforts

18   to cause Global Advisors to sell the Akoustis stock and pay

19   debts that Global Advisors may not owe would adversely

20   affect the amount of money that can be up-streamed to Mark's

21   estate, if the Trustee ultimately prevails in his avoidance

22   action.  Furthermore, the Plaintiffs cannot sidestep

23   Bankruptcy jurisdiction over the dispute raised by their

24   pleadings by ignoring Mark's bankruptcy and failing to join

25   his Trustee (indiscernible).

Page 23

1          Accordingly, the remove proceeding is, at a

2     minimum, related to Mark's Chapter 7 case, and this Court

3     has jurisdiction under 28 USC Sections 13.34 and 157, and

4     the February 1, 2012, standing order of referral.

5          While -- in addition, while the parties have not

6     briefed Nevada law, it is clear that Rinde, even if the

7     president and sole director, has the authority to sell

8     Global Advisors' only asset with a share -- without a

9     shareholder vote.

10         I further conclude that the litigation should be

11    transferred to California Bankruptcy Court.  Title 28,

12    Section 1404(a) authorizes the Court to transfer a related

13    proceeding in the interest of justice and for the

14    convenience of the parties and the witnesses.

15         The interest of justice will be served because the

16    Plaintiff's claims could be tried together with the

17    Trustee's claims, as the common issue is who owns Mark's 50

18    percent interest in Global Advisors.  Moreover, under Nevada

19    law, unless otherwise provided in the articles of

20    incorporation, a corporation cannot sell all of its assets

21    without the affirmative vote of its shareholders, Nevada

22    Revised Statute Section 78.565(1).  Unless that exception

23    applies, Rinde alone cannot cause Global Advisors to sell

24    the Akoustis stock.

25         Trying the issues in the same Court where all the

1   parties whose consent might be needed to sell the Akoustis

2   stock are present may facilitate a resolution.  In addition,

3   trying these issues in separate Courts may lead to

4   inconsistent results.

5           The transfer will also serve the convenience of

6   the parties and the witnesses. Mark, the principal witness,

7   and his Trustee live in California.  The Defendant Gorham is

8   also a California resident and has raised colorable

9   arguments that the New York Courts lack personal

10  jurisdiction over him.

11          Rinde is a New York resident, but the Trustee has

12  joined Global Advisors as a Defendant in his adversary

13  proceeding, and Rinde will presumably defend Global

14  Advisors' rights in the California Bankruptcy Court.  In

15  addition, he and Global Advisors have filed a notice of

16  appearance in Mark's bankruptcy case, and the notice of

17  appearance indicates that they have retained California

18  counsel.

19          Flangas, who is in possession of the Akoustis

20  certificate, is a Nevada resident.  Finally, Susan, a

21  Connecticut resident, has not responded to or opposed the

22  motion to change venue.

23          Accordingly, the motion to transfer venue to the

24  Bankruptcy Court in the Central District of California is

25  granted.  With respect to answering the complaint or

Page 25

1    spending the time, I'd prefer to give the California judge

2    the option or the decision whether or not that should be

3    granted.

4          So, what I'll do is I'll adjourn the -- I'll

5    extend the time pending the transfer of the case to Judge

6    Russell, who I assume will get it, according to their

7    assignment rules.  And he can make the decision on whether

8    or not the time to answer should be extended.  And let's say

9    that the time to answer will be 14 days after it's

10   transferred to Judge Russell.  So, there's a gap.

11         I'll also mark off your motion to remand as moot.

12   And you can submit an order.

13         MR. TOFEL:  Thank you, Your Honor.  Just for

14   clarification, and I thank you, Judge, the extension of

15   time, I assume Your Honor is granting that to the parties

16   that sought that extension, because --

17         THE COURT:  Yes.

18         MR. TOFEL:  Mr. Flangas has never appeared or said

19   a word.  I just want to be clear.  And I understand that

20   Your Honor --

21         THE COURT:  I am only granting it with respect to

22   those -- as I understand it, Mr. Flangas is in default

23   already.

24         MR. TOFEL:  Yes, he is, Your Honor.

25         THE COURT:  (indiscernible) You know, I guess you

Page 26

1    can enter a default judgment against him.

2            MR. TOFEL:  No, I understand.  I just wanted to

3    make sure Your Honor and I were on the same page.

4            THE COURT:  Yes.

5            MR. TOFEL:  Thank you, Judge.

6            THE COURT:  All right.

7            MR. BLUE:  Thank you, Your Honor.

8            MR. BENZIJA:  Thank you, Your Honor.

9            MR. HORGAN:  Thank you, Your Honor.

10    (Whereupon these proceedings were concluded at 11:03 AM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        I N D E X

2

3                        RULINGS

4                                          Page        Line

5    Motion to Transfer Venue granted         24          23

6    Motion to Extend Time to Respond extended  25          4

7    Motion to Remand mooted                   25          11

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    **Sonya**                    Digitally signed by Sonya Ledanski
                                   Hyde
                                   DN: cn=Sonya Ledanski Hyde,
     **Ledanski Hyde**            o=Veritext, ou,
7                                  email=digital@veritext.com, c=US
                                   Date: 2017.05.25 15:55:34 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 25, 2017

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1801 Century Park East, Suite 2400, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): Defendant Gary J. Gorham's Reply in Support of
His Special Motion to Strike; Supplemental Declaration of Gary J. Gorham; Exhibit

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
07/17/2017         , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Stephen F.Biegenzahn, efile@sfblaw.com
Leslie A.Cohen, leslie@lesliecohenlaw.com, J'aime K.Williams, jaime@lesliecohen.com,
Brian A.Link, brian@lesliecohen.com
Howard Ehrenberg, ehrenbergtrustee@sulmeyerlaw.com, ca25@ecfcbis.com, C123@ecfbis.com
☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)   07/17/2017        , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)   07/17/2017       , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Hon. Barry Russell              Lawrence E. Tofel              J. Bennett Friedman & Michael Sobkowiak
United States Bankruptcy Court     Lawrence E. Tofel, P.C.        Friedman Law Group, P.C.
255 E. Temple St.,Suite 1660       163 Washington Ave., Suite 5B  1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90012              Brooklyn, NY 11201             Los Angeles, CA 90067
☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct

07/17/2017     Scott J. Tepper
Date           Printed Name                                   Signature

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                          **F 9013-3.1.PROOF.SERVICE**